Our next case for argument this morning is Chuchman v. Garland. Mr. Raken. Yes, good morning, Your Honor. May it please the Court, my name is Kevin Raken and I represent the petitioner Nadia Chuchman. Ms. Chuchman petitions for review of a decision of the Board of Immigration Appeals and an immigration judge denying her request for asylum from Ukraine. The immigration judge found that Ms. Chuchman's testimony was credible and that she corroborated her testimony with evidence. The issue is whether or not what happened to her in Ukraine amounts to past persecution. Ms. Chuchman argues that the board and the immigration judge erred in their analysis of the events that occurred in Ukraine and their finding that they did not constitute past persecution. She additionally argues that substantial evidence does not support that finding and that a review of the record evidence compels a different finding that she did indeed suffer from past persecution. The crux of the immigration judge and board's decisions was based on their analysis of two assaults by the police in Ukraine. Ms. Chuchman was a member of a then opposition political party that was taking part in protests against the government of Viktor Yanukovych during what is referred to as either Euromaidan or the Orange Revolution in Ukraine in 2013 and 2014. Ms. Chuchman was also a student at university at the time and was active with the UDAR political party as a student. She attended a rally in 2013, early 2013, where she was assaulted by a police officer who hit her with his baton. I'm sorry, this is November 2012. I apologize, your honors. She was assaulted by a police officer who hit her in the shoulder with a baton. She was arrested, interrogated, and detained for a day at the police station. The police officer questioned her about her political activities, the members and leadership of her political party, and warned her that she should give up her political ideas or face imprisonment. The IJA and the BIA both failed to discuss the officer's questions or threats, mentioning only that she was detained for a night and released without charge, thus stripping the context of both the assault and the threats made by the officer from their analysis. And it is not clear that the IJA or BIA considered those facts in analyzing the first assault. When she returned to university from this first protest that she attended where she was arrested by the police, the dean told her that he would be unable to protect her any longer, that he would be forced to expel her by other authorities if she continued her political activities. The BIA tries to cast this as some sort of benevolent warning from the dean rather than an implied threat that he will be forced to expel her for her political actions, and that there's nothing more that can be done to stop that from occurring if she continues with her activities. For a period of time, based on those warnings and fear from the first assault by the police, Ms. Tuchman did cease her political activities. She resumed them in the spring of 2013 when she attended a rally outside of Kiev in a town further out in Ukraine from Kiev, where she was again approached by a security officer who began yelling at her and cursing at her for carrying an opposition flag, which appeared to infuriate the officer. He demanded she produce documents, and Ms. Tuchman showed him her student ID. He then began swearing at her, telling her that the police were imprisoning political activists like her, and began to assault her. He grabbed her and violently shook her, and she was able to use some sort of pepper spray or mace to break the officer's grip. As she tried to run away from the assault, the officer hit her in the head with sufficient force to knock her unconscious, break her nose, and cause contusions and hematomas. She required weeks of hospitalization for treatment for her injuries, and she corroborated that with the hospital records, which the IJ found. Both the IJ and BIA failed to discuss the nature of the officer's threats to Ms. Tuchman during the assault. The analysis they conduct would seem to indicate that she was at a rally and was cursed at by this officer without any context for what the cursing was for or any threats that were made, and that she suffered a concussion, which was upsetting to her. The reality is that this is part of a pattern and practice of persecution that she suffered because of her political actions, including threats to be expelled, serious physical assaults on her body, including a broken nose, concussion, and hospitalization for more than overnight, for weeks indeed. And the IJ and the BIA failed to actually analyze all of these events. They analyzed each event in isolation, and their analysis of the assaults themselves are stripped of the context of the threats and questions that the police had during the arrest and interrogation and while the second officer was attacking her. Additionally, there were summons issued and continue to be issued seeking Ms. Tuchman's return and possible arrest and interrogation or prosecution by the police. And we feel that this record evidence that the IJ and BIA did not adequately address indicates that she suffered past persecution. There was serious physical force exerted on Ms. Tuchman because of her political opinion. And thus, the IJ and BIA erred in finding she wasn't persecuted. They then shifted the burden to her to rebut that she did not have a well-founded fear of future persecution, rather than putting that burden on the government where it should have remained as she did suffer past persecution. The IJ and the board's analysis of the well-founded fear of future persecution was also incorrect because it did not actually cite to record evidence. The judge came to his own conclusion that corruption and problems for dissidents were only happening in the Crimea or Donbass region and did not focus on ample record evidence that corruption and impunity within the police forces and within the justice system were widespread in Ukraine and that they were not limited to the areas where conflict with Russia was ongoing. We feel that the record evidence actually does compel finding a past persecution and then the burden should have shifted to the government and that because that did not happen, the decision was an error, that the record evidence compels an alternate finding. And I would reserve the remainder of my time if the court does not have questions for rebuttal. Certainly, counsel. Ms. Perry. May it please the court, Roseanne Perry on behalf of the Attorney General. Substantial evidence supports the agency's denial of Ms. Tuchman's application for asylum and withholding of removal. Ms. Tuchman failed to meet her burden of proof to show that she suffered past persecution or has a well-founded fear of future persecution. The two incidents of harm she endured, the claim that she was threatened with expulsion from her university, the summonses that she received and the questioning of her mother do not rise to the level of past persecution. With regard to the two incidents of harm, the court has held that similar conduct does not constitute persecution. With regard to the threat of expulsion, she explicitly testified that the dean did not threaten to expel her. She testified that the dean sounded worried and her asylum statement, she said that the dean stood up for her because she was a good student. With regard to the issuance of the summons, the summons could be connected to legitimate prosecution from her altercation with a police officer. She has not shown that she has a well-founded fear of future persecution. Her political party had been incorporated into the leading political party at the time of the mayor's hearing. Therefore, the respondent would ask if there's no questions, respectfully request that the court deny the petition for review. Has the institution failed to establish that she suffered past persecution or has a well-founded fear of future persecution? All right. Thank you, Ms. Perry. Anything further, Mr. Braca? No, no, Your Honors. I would only note that we believe that the government in its argument and the IJ and BIA have myopically focused on the two assaults and that there is a broader context that those need to be analyzed within and that the analysis itself of those two assaults was not complete either and that by analyzing those each in isolation, the government failed, the board and the IJ failed to conduct the proper analysis which is to look at the totality of the events to determine if past persecution occurred. And we believe that this court's precedent in Stanikova and the significant physical force that was inflicted on Ms. Tuchman in support of finding a past persecution. Thank you very much. The case is taken under advisement.